We'll hear argument today in Case No. 10-382, United States v. Jicarilla Apache Nation. Mr. Shah. Mr. Chief Justice, and may it please the Court, Relying on common law trust principles applicable to private fiduciaries, the Federal Circuit imposed on the United States a duty to disclose attorney-client privilege communications to an Indian tribe. That abrogation of the privilege should be reversed for at least three reasons. First, reflecting the sovereign nature of the United States' functions, the Indian trust context lacks the factors essential to recognition of a private trust fiduciary exception. Unlike in a private trust, government attorneys and other Federal officials owe an exclusive duty of loyalty to the United States, not to the beneficiary. The government pays the cost of trust administration out of appropriated funds, not out of the trust corpus. The government, not the trust, owns the resulting records, and the release of such governmental records, including to a tribe or individual Indian, is governed by specific statutes and regulations, as well as the Freedom of Information Act, not the common law. Second, the decision below conflicts with this Court's precedents that distinguish the United States from a private trustee and that reject enforcement of duties governing the administration of Indian property that are not set forth by specific statute or regulation. The fiduciary exception to the attorney-client privilege is premised on a private trustee's general common law duty to disclose trust information, but no statute or regulation imposes such a duty on the United States. Sotomayor, all of the statutes relating to these funds use the word trust. Not one statute defines trust and says in any way this is not a fiduciary relationship. To the contrary, in fact, most of the statutes require what would be consistent with fiduciary obligations, and at least one of them that you rely on says, but not limited to. So the issue before us doesn't involve a competing sovereign interest by the U.S. You've conceded that in your cert petition. The circuit below said this is not a case where there is an independent sovereign issue governing the U.S. activities. Just explain to me what's the rationale that would permit a trustee of a trust fund to withhold from the beneficiary the kinds of documents that relate to the management of the fund? If the funds exist for the benefit of the Indian tribe, why aren't they entitled to management documents? That's the part that doesn't make the point, that you're not explaining. Mr. Shah, you might want to make your third point. You said you had three points preliminarily, so why don't you make your third point and then respond to the question? Shah, Your Honor, the third point is that the Federal Circuit's decision poses serious practical problems for the government. Because the general common law duty to disclose, which undergirds a fiduciary exception, extends to all trust information without regard to the existence of litigation, accepting it implies a broad and burdensome disclosure obligation. For example, there are over 300,000 individual account holders, individual Indian account holders, on top of the tribal, tribal account holders. If this Court were to accept the fiduciary exception and thereby ratify the underlying rationale, presumably then any one of those or all of those 300-plus thousand individual account holders could simply call up the Interior Department and request all related trust records outside of the existing statutory and regulatory regime. Now, Justice Sotomayor, let me turn back to your set of questions. And let me start with the first point that you made, which is the statutes here use the term trust. Why doesn't that connote some sort of broad fiduciary relationship? This Court has made clear in its precedents, and it dates back to the Mitchell one, the first decision in Mitchell case, where Congress's use of the term trust, the Court said, does not imply the full gamut of common law fiduciary obligations. The dissent made precisely, the dissent in Mitchell made precisely the argument that you're sketching out here, which is when Congress uses a term like trust, we would naturally assume that it implies fiduciary obligations. The majority in Mitchell rejected that notion. And, in fact, in Mitchell two in the Navajo Nation decisions, the Court has continued to reject that proposition. But more, more than as a matter of precedent, I think that makes. Sotomayor, but in all of those cases, counsel, it was a limitation related to competing interests, meaning it was recognizing that there are potentially moments in which an attorney is acting both in the interest of the government and in the interest of the tribe. Justice Sotomayor, with respect, there is no competing interest that I'm aware of that was mentioned in the Mitchell decisions, Mitchell one, Mitchell two, or even the Navajo Nation decisions. Those were simply, in Mitchell one, it was the Indian General Allotment Act, which said that the United States shall hold in trust land for the benefit of the Indians. The argument made by the tribe in that case and by the dissenters in the Court was when the Court said you shall hold the land in trust, that implies certain management and other responsibilities for resources related to that land. This Court said, no, when Congress uses the term trust in the Indian context, that there must be specific statutory and regulatory duties that the Court sets out. Sotomayor, let me explain. Sotomayor, that was a jurisdictional question, not a question with respect to the obligations. You're not seriously suggesting that if you're a trustee of an Indian fund that you can breach your fiduciary duty by simply not exercising care in your investment strategies. So some form of duty exists from the common law, and the common law has to define that. Well, Your Honor, I agree everything up to the point when you said we go to the common law. Of course, there would be in this context some enforceable duties with respect to investment of the funds held in trust, and that's because the relevant statutes, Section 161a and 162a, set forth specific investment duties that the government must comply with. Now, as to your other point that Mitchell won in the Navis conditions. Sotomayor, so why would, if it imposes those duties, protect you from disclosing items that might attorney competencies that go to that very act, the very act of investing in the way, even under your definition, that the trust requires you to do? A couple of responses, Your Honor. The two statutes that you're talking about, 161a and 162a, set forth specific investment duties. They don't say anything about disclosure. The 1994 Act does set forth some disclosure obligations, but they are extremely discreet. There are essentially two disclosure obligations that all of these statutes together impose. The United States must provide an account statement, a quarterly account statement, and the United States must provide the Indian tribes and individual Indians an annual audit. That is the extent of disclosure obligations that Congress has set forth and that the Interior Department, by regulation, has implemented. Now, to the extent that your question suggests that the tribes may need more in order to enforce those enforcement duties, I think the account statements and the annual audit goes a long way towards suggesting that if there is a problem, then the tribe may want to try to enforce those duties. The other point I would make is, although the legally enforceable duties under this Court's decisions in Mitchell and Navajo Nation are those set forth by statute and regulation, that doesn't mean the Interior Department doesn't have discretion to provide more information. In fact, in practice, the Interior Department does provide a much broader swath of information to the Indian tribes regarding these accounts than the two discreet pieces of information that the statutes set forth. So I think there's a need to be more transparent. Alito, do you agree that the fiduciary exception is well established as a general matter? Your Honor, the United States does not contest the existence of a fiduciary exception in certain private trust contexts where the criteria for that exception are satisfied. So the answer is no, we don't dispute the existence in certain contexts under certain circumstances of a fiduciary exception. So if this case arose in a different context with a different trustee, the position of the United States would be that under Rule 501 of the Federal Rules of Evidence there is a fiduciary exception to the attorney-client privilege. Yes, Your Honor. It would depend on the circumstances. For example, if it were a private trust and the factors that the — in which the courts, the old English cases, for example, have recognized where the fiduciary exception applies, that is, the information is sought solely for the benefit of the beneficiary, the expenses for that legal advice are paid out of the trust corpus, and as a result of that, the resulting legal advice and the resulting records belong to the trust corpus. All of those things give right, as the old English cases say, give right to a common law right of access for the beneficiary to access those. Ginsburg. Ginsburg. You don't have to take a position on that, because you don't represent a private trustee, and the government can accept arguendo that there would be such a relationship, but I don't think you have to defend it. Absolutely. The Court need not decide that question in order to reach the question. The Court can assume an arguendo and then go forward. I think the critical point here is, though, that all of the factors that underlie that exception in the private trustee concept are absent here. Here, the government is acting out of its own interest. It is paying for the legal advice out of congressional appropriations. The government owns the records at issue by virtue of the Federal Records Act, by virtue of interior department regulations, which are cited in the back of our brief, make very clear that the government owns these records, and because they are governmental records, their disclosure is not governed by the common law. There is a high level of trust. I guess the thrust of what my understanding of the thrust of what Justice Sotomayor was asking is something like the following. It's easy to understand how there can be competing government interests when you're talking about some of the management of lands, things of that nature. But when you're just talking about managing funds, what competing interests can there be in practical terms? If you assume, arguendo, that this exception applies to a private trustee, why should it not apply to the government in practical terms? Sure. Let me provide two responses, Justice Alito. First, I think, as a formal position, I don't think our position turns, as a formal matter, on the existence of a specific competing duty. I think such a rule would overlook the ways in which the U.S. inherently, United States inherently differs from a private trustee. And I think that's especially true in the light of the complex, multifaceted ways in which the government interacts with Indians and Indian tribes. Those sovereign obligations extend to law, providing law enforcement, educational duties, health services. One subset of those duties are the type of trust responsibilities at issue in this case. Now, to be more concrete, I think even putting aside that larger framework which may create tensions between the United States and with the Indian tribes in certain circumstances, I think even in the trust fund, purely in the trust fund context that we're talking about, there could be at least tensions that arise. For example, the D.C. Circuit in the Cobell case, when it talked about the accounting obligation that it imposed on the government, it made clear that it's not the same accounting obligation that would apply at common law. And the reason the D.C. Circuit gave was because the United States would be taking that, performing that obligation at the expense of taxpayers. There are budgetary constraints that the United States must take into consideration as a sovereign. Maybe that's not a specific competing obligation in the formal sense, but I think it's a factor that distinguishes the United States from a private fiduciary. Also, there are, for example, in our brief, we discuss one of — just as an example, one of the documents at issue in this case, which involves a judgment by a tribal court seeking to attach funds from an individual Indian money account. The United States acts as a trustee with respect to that individual trust — Indian account. It may be the case that the United States, consistent with its fiduciary and its obligations in that sense, could simply pay out the judgment. But I think there would be room for the United States to take a closer look at the judgment to make sure that it complies with, for example, the Indian Civil Rights Act or basic— Breyer. Suppose we have the union trust company, a private company that has 5,000 trusts account. One day, the president of the company says to the lawyer, Mr. Smith's account is in a special situation. Will you please look into what we should do for him as trustee? There is no implication for any other account. There is no threat of litigation. I just want to know what we're supposed to do. Now, I take it the document that is subsequently written would be open for Mr. Smith to get. Is that right? Yes, Your Honor. We did not— Yes. Okay. Now, why should the government be treated differently were the situation identical to what I just proposed? I think the response is, Your Honor, is that the situation will never be identical to the hypothetical you posed, because the government inherently differs. And let me set out— But this argument, frankly, would be the — we wouldn't have any need for 501, because if, as an evidentiary rule, the government is always different, then there is no situation in which a fiduciary duties in common law would ever exist. To be clear, Justice Sotomayor, the government is not arguing that no common law exception to the attorney-client privilege can apply to the government or that Federal Rule 501 — Federal Rule of Evidence 501 is otherwise inapplicable. We're making a much more limited argument that this particular common law fiduciary exception is not applicable to the government, and that is because the premise of that fiduciary exception does not apply. Sotomayor, is there any greater value to a fiduciary duty than to manage the account for the benefit of the beneficiary? That's the very essence of what a trust means. And so I'm having a hard time understanding not a competing interest situation where you're addressing a different statutory requirement, but merely the — and that's what this case was presented as, merely the management of the trust. So what you're — it seems to me you're arguing is there is no duty. You're saying it's all defined by statute only, but you're rendering a — there's no need to use the word trust, because it wouldn't be a trust. Well, Your Honor, I don't think that those two things are inconsistent. The fact that we don't look to the common law to fill in all of the duties doesn't mean that the government doesn't have duties in this context. It has very specific duties to invest the funds properly, to invest the funds as set forth in the statutes. What this Court has said cannot be done is to look at the general common law to create obligations on the government. And the— Breyer, I'd like to get an answer, though, to my question. My question, to go back to it, was imagine that the government has 1,000 trust accounts for 1,000 trials. Okay. And imagine that several of them consist of nothing more than $500,000 in cash. Okay. And one day, the Secretary of the Interior says to a lawyer, I fear there is a kind of a difficult fiduciary problem arising into account number 302, which is owned by such-and-such tribe. There is no threat of litigation. As far as I can tell, the answer to this will have no implication for anything else in the government. Will you please look at it and give me a memo what to do? Now, why should that memo not be given to the lawyer for the tribe, if in the identical case of the union trust company, you would give the lawyer to the — the memo to the beneficiary? A couple of reasons, Your Honor. First, as this Court recognized starting back in 1912 in the Heckman case and reiterated in the Candelaria and Minnesota cases after that, is that the United States is not acting simply out of the beneficiary's interest. So in the hypothetical, the original hypothetical that you posed in the corporation or the bank that was acting as a trustee, there the trustee is simply acting out of its fiduciary obligation solely to benefit the beneficiary. That is not how the government works. As this Court made clear, the government is acting not out of the beneficiary's interest in managing the statutes and regulations that govern the administration of Indian property. That's a fundamental difference. Breyer. You're saying, one, we're not really a trustee totally. Okay. Yes. Now, if we treated — the courts treated you as a trustee really and totally. Sure. In this very limited situation I described, what harm would befall the government? Well, Your Honor, we would still win, and here's why. The factors that — even assuming a common law trustee, the fiduciary exception doesn't apply automatically to all common law trustees. There are several things that underlie that fiduciary exception. One, the advice sought is typically paid for out of the trust corpus, and as a result of that fact, the trust itself owns the records. Those are the principal two factors that the cases recognizing a fiduciary exception rely upon to create a common law right of access of the beneficiary to such records. None of those factors are present here. The government pays for these — for the cost of administration, including legal advice, out of congressionally appropriated funds. The records resulting from that advice belong to the government. The government owns those records, both as a matter of statute and regulation, and the disclosure of those records is subject to a highly reticulated regime. There are statutes, there's regulations, there's the Freedom of Information Act. All of that would be bypassed if this Court were to accept the fiduciary exception in this context. Other than the time and expense of going through voluminous records, which is obvious, is there any other harm to the government in being required to show that there's a competing interest that makes disclosure unnecessary or improper? Yes, Your Honor. As I said to Justice Alito, it may not always be that the government can point to a specific competing interest in the sense that Justice Sotomayor is talking about, a competing statutory interest. But there are inherently these tensions, budgetary concerns, other ways in which the United States interacts with Indian Affairs. It's one of them shielding government actors. I mean, from what you said so far, on the one hand, you recognize there is what we call a guardian ward relationship between the United States and the tribe. But what you seem to be suggesting is that the government has a dual focus, and one is its guardianship relation to the tribe, but the other is these are government actors and the government is also interested in shielding its actors. Is that it, or is it a more nebulous interest? Well, Your Honor, I think it could be more nebulous, but there I think there is a real chilling concern. I think this also dovetails into Justice Kennedy's question, that the interior department, in order to properly administer, to carry out the statutory and regulatory duties, it often needs to seek the legal advice of the lawyers in the interior office or in the Department of Justice in order to avoid chilling the full and frank seeking of rendering of legal advice, the same purposes. Scalia's general purpose behind the exception to 301, right? The exception for providing attorney's advice. The ordinary private litigant doesn't have to show, when he refuses to turn over attorney advice, that there is some conflict which would make it harmful for him to turn that over, does he? Not as a general matter, Your Honor. If we were in the private trustee context and a court were to decide that the fiduciary exception applied. Scalia, not the trustee context. I'm just talking about the normal operation. Absolutely, Your Honor. The justifications are general in nature and there isn't an obligation of its own. And so once you establish that this is not the normal trust context, we apply the normal Rule 301 law, and that does not require the person who declines to turn over the information to show why it would really hurt him to turn it over, right? I think that's exactly correct, Justice Scalia. How many of these mismanagement suits? Do you have any estimate? Yeah. Currently, there are about 90 such pending suits, counting all of the district courts as well as the court of Federal claims. And of course, this issue could arise in any of those cases. Let me get back to one of Justice Sotomayor's questions, the initial question about the fact that Congress has used the term trust. I think as a matter of precedent, both the Mitchell decisions and the Navajo Nation decisions, I think those are binding, controlling precedent, and the Court should not deviate from those precedents that say a statute or regulation must define the duty. But beyond the binding nature of those precedents, I think they make sense from first principles as well. And let me try to explain why. The term trust has been used by both Congress and the courts in a variety of ways, often in a variety of imprecise ways, when it comes to the relationship between the United States and Indians and Indian tribes. Courts and Congress has used the term when it comes to providing law enforcement, when it comes to providing educational services, health services, none of which are really the type of private common law trust that we know. And even in scenarios where there is a discrete property interest that might bring us closer to the common law context, this Court has used — this Court and Congress has recognized that trust can mean a lot of different things. It can mean the type of bare trust that was at issue in Mitchell 1, the Indian General Allotment Act, when the trust was really simply to avoid alienation of the lands. It may mean specific investment duties, as we have here. But the point is that there is no one-size-fits-all trust terminology. And so that's why it makes sense for this Court to require Congress to set forth the specific duties and statutes and the Interior Department to set forth specific duties and regulations before it implies such a sweeping obligation on the United States. I think it also flows from a more general principle of a reluctance to hold the United States to common law duties when there is an existing statutory and regulatory regime. I think for all of those reasons, not only as a matter of precedent, but as a matter of principle, I think the fiduciary exception would not apply here. Kennedy, I hadn't thought about your argument until you made it this morning, that if the tribe is correct that it owns these documents, it can get them any time. But the trial court here divided the documents into five categories. And some of those categories, it denied production. Yes, Your Honor. And I take it it did that in the context of recognizing the attorney-client privilege, including work product, which were the accountant's records. Right. As I understand it, you're right, Justice Kennedy, but most of the documents that the trial court said the government didn't have to produce were, as you stated, attorney work product privileges, privilege documents. And those, the trial court said that no fiduciary exception would apply to the attorney work product privilege, and it was on that basis that it allowed the government to withhold the documents. If there are no further questions, I would like to reserve the remainder of my time. Thank you, Mr. Shah. Thank you, Your Honor. Mr. Gordon. Mr. Chief Justice, and may it please the Court. The Hickory Apache Nation has sued the government for mismanaging millions of dollars of its trust monies. No trustee in this situation, including the government, is entitled to withhold the legal advice that it has received about managing the beneficiary's money. The beneficiary is entitled to see that legal advice so that it can determine whether the trustee followed the advice. It's — you don't doubt that in this context sovereign commands would trump trustee obligations, do you? In other words, if Congress— I do not, Mr. Chief Justice. The notion of the issue here is an issue of evidence, and it is controlled by Federal Rule 501, which specifies that Federal courts have to resolve claims of privilege based on common law principles. Under the common law, a trustee cannot assert the attorney-client privilege to withhold from a fiduciary legal advice about management of the trust. That, I submit, is the end of the analysis. Well, what do you make of the fact that the Uniform Trust Code reserves decision on the question whether there is a fiduciary exception to the attorney-client privilege? That seems to suggest that as a general matter, this is not as well established as you seem to argue. Your Honor, there are very — there are a handful of States that have not recognized the fiduciary exception. But there is no Federal circuit that has refused to recognize it. Indeed, all of the Federal circuits that have considered it have adopted it, and it is recognized in both, as we've stated in our brief, the restatement of trust and the restatement of the law governing lawyers. Has it ever been applied to your knowledge where it was not the case that the trust paid for the attorney's advice out of the trust funds and where the trust did — where the trust owned the papers that consisted of the attorney's advice? Is there any case where those two conditions, or either one of them, did not exist? Where the trust was required to turn over the attorney's advice? Justice Scalia, I cannot cite a specific case. But there are other cases. Scalia, that's the argument of the government, that the exception, the trust exception to the extent that it exists, was based principally upon the fact that these papers belonged to the trust and that the attorney's advice had been paid for by the trust. So of course the trustee is entitled to get it. But that's not correct, if I may, Mr. Justice. If you look at the seminal American decision, the Riggs Bank decision that's cited in both briefs, they talk about the rationales. And they said that the first rationale is that the trustee acts as a proxy for the beneficiary in obtaining the advice. The second rationale is that the trustee has a general duty to disclose relevant information to the beneficiary. The Court mentioned that one factor that it would look at was who had paid for the legal advice. But it did not suggest that that was determinative. And indeed, subsequent case law has made clear that it is not, and the restatement says explicitly that who paid is not the controlling factor. Scalia But you don't have a single case? Pincushion Not that I can cite right now. But it would be the case where the trust funds paid the lawyer, and the Court distinguished cases where that wasn't so, where the trustee was paying the lawyer for the trustee's own protection. And the Court went out of its way to say we are dealing with a case where the lawyer is paid out of trust funds. In Riggs, this is a seminal case, right? Yes, Your Honor. But the issue, this is, I submit, letting the tail wag the dog. What we are talking about is money that belongs to the beneficiary. We are talking about money. We are not talking about a bare trust. We are talking about a full-fledged trust under Mitchell II. Indeed, this Court in Mitchell II said that trusts involving the management of Indian money were full-fledged trusts. And in that situation, for the government to say that while any private fiduciary would be obliged to show to the beneficiary the legal advice it's received when there's an issue about whether it's fulfilled its fiduciary duties, it's different, because we've spent our hard-earned money on these lawyers and we own the records in issue. I mean, that doesn't make sense. And basically, as a matter of discovery, which is where we are right now, the posture of the case, whenever you seek discovery in virtually all of the circumstances, the documents in issue are going to belong to the opposing party. Counsel, the attorney-client privilege is policy-based, and I'm concerned about the policy implications of your position. Our system has concluded that it works best if people have candid advice from their lawyers. And my concern here is if you're a lawyer, you are a lawyer, and you're asked for your advice by a trustee, and if you know that that's going to be shared with the beneficiary, you're going to give bland, mushy, hedging advice rather than direct and candid advice to the trustee, because it's going to be shared more widely beyond the trustee. And that's — that hurts not only the trustee, but also the beneficiaries whose trustee does not have candid legal advice. My response to that would be twofold, Your Honor. The first is that that same argument can be made for any private fiduciary, yet the courts have felt that the more important relationship is the relationship between the trustee and the beneficiary, that that trumps the need for — or the desirability for private discussions. So how does — I appreciate the point, but how does a trustee get candid legal advice? In every case, isn't the lawyer — concerning his dealings with the beneficiary, with the trust, I don't know if I have to do this or I have to do this. And it seems to me that if the information is always going to be shared with the beneficiary, the trustee is always going to get hedged advice. Well, if it's never shared, Your Honor, then it leaves it at the option of the trustee to selectively waive the privilege when it's to its advantage in a breach of trust. No, why can't the trustee say, I'm going to hire my own lawyer, I'm not going to pay this lawyer out of trust funds, so it will be my lawyer, and his advice is only to me and serving my interests. Why wouldn't — why wouldn't that suffice? Well, I think the issue, Your Honor, is whether that, in fact, is what the trustee is seeking. If the trustee is seeking advice about personal liability, then I certainly agree that the trustee could do that. If the trustee instead is seeking advice, regardless of who pays for it, but is seeking legal advice about how the trustee should manage money belonging to the beneficiary Well, that's always a question of liability. If he messes up and doesn't manage it the way he's supposed to, he'll be liable. So the distinction you've drawn doesn't seem to me to be a workable one. Well, Your Honor, I submit that the whole issue is, if there is a suit for breach of trust, which is the precondition for all of this, whether in that circumstance the trustee is obliged to produce the legal advice that it is received so the beneficiary cannot hire his own lawyer, you're saying. So long as he's a trustee, he cannot hire his own lawyer to get advice on how to manage the trust in a way that will avoid his liability. He just can't do it, right? Trustees can't have their own lawyer. Yes, Your Honor, that's the position. And that puts the government in no different position than private beneficiaries, or ERISA beneficiaries, or any other sorts of beneficiaries. What's your best case that you have on that in the private trustee context? I thought your answer was going to be that in that case, the fact that the payment is made by the trustee out of the trustee's own funds and not out of the trust funds might be dispositive and might give him the privilege. But you seem to say, in answer to the questions from the Court, that other than this distinction you make between what the personal liability is and how he ought to manage a trust, which I think is a murky distinction, that the documents have to be disposed. What's your best case for that? Justice Kennedy, let me respond to that. And I agree that who's paying for it, if the trustee is paying for it out of his own or her own pocket, that is a factor that certainly should be looked at and would be entitled to some weight in terms of what the purpose of the advice was for. But ultimately, the issue is whether the trustee is seeking to protect personal interests, protect against a claim of liability, for example, or whether the trustee is looking for advice about how to manage the beneficiaries' funds. So I'm the trustee and I say I would like legal advice as to whether I should renegotiate this lease with the government. Yes, Your Honor. I want that advice so I manage the trust correctly. And I'm concerned if I don't manage the trust correctly, I'm going to be sued. Now, is the document from the lawyer responding to that inquiry privileged or not? I think, Your Honor, that if it focuses on how to manage it properly, then, and it's prospective, then I think that it is not privileged. If instead you posit, you know, this is what I did and I'm concerned I may have screwed up, do you think I'm liable, then I think a different answer may have been. So if he says this is what I did and I might be liable, it's privileged. If he says this is what I'm going to do, it's not. Please tell me what to do, yes. Which means you can't get preventative advice, which is one of the most important kinds of advice an attorney can give. Well, Your Honor, I agree preventative advice is the most, is among the most important an attorney can give. But why should the government be in a different position with regard to this than by the presentation? I have a question on that particular point, and there may be an obvious answer to this which I just couldn't find. But if the lawyer is in the government and he writes a memo, then, and if it's available to a litigant who litigates against the government, as it would be here, then why isn't it available to the entire world via the Freedom of Information Act? Your Honor, the Court said in the Sears decision, which is cited in our brief, I believe it's in footnote 16, that citizens' access rights under FOIA are not necessarily coextensive. Well, that's certainly true, they're not. But I just wonder, what is it in FOIA that would make this not available to the world? That, Your Honor, and also the fundamental. Breyer. Well, that just says they may or may not be coextensive. Reading the statute, it says you have to make all interagency, all memos available of a certain type, which I think this would fall into. Then, exception 5 protects, among other things, attorney-client memos that are privileged, because they're interagency or intraagency memos that would not be available by law to a party other than an agency in litigation. Now, they are available if you win. And so if you win, that exception doesn't seem to apply. And if it doesn't seem to apply, that's what was the — then the whole world can get this memo. And what I'm wondering is there must — either there is a very obvious answer to that, which there could be, or there isn't. If there is an obvious answer, that's the end of it. Well, I would say — If there isn't an obvious answer, I'll have to go away and worry about it. I would say, Your Honor, that this Court's decision in Julian, where it said that different classes of persons may have different rights under FOIA, the right we are talking about here is the right of the beneficiaries. We're not talking about the citizens' right to see how Indian trust monies have been made. I know you don't want that, and what I'm looking is how do you prevent that. But I believe that under the precedent in Julian, that it would be the — what we're talking about here is access to Indians whose money is being managed. If we assume for the sake of argument that a private trustee may, using the private trustee's own fund, hire an attorney to obtain prospective advice about liability, does that doom your argument here for the reason that the government claims it has no ability to set up a system like this, to have some attorneys in the solicitor's office provide advice regarding the management of the funds, and other attorneys in the solicitor's office provide advice regarding — regarding the possibility of prospective liability in light of all of these suits that you mentioned? Well, Your Honor, again, I come back that the trustee is entitled where the issue is liability rather than how to manage the money. That gets into an area that would not be subject to the fiduciary exception. So if that is the focus of the advice, a private beneficiary wouldn't have to give up that advice, and we don't contend that the government should either. But whereas here, all of the documents are general documents that deal generally with how to manage Indian trust funds. Again, as the Chief Justice pointed out, that seems to me an artificial distinction. What I ask for from the attorney is advice as to how I can manage the trust so as to avoid liability. I mean, the two are connected. You can't separate out advice as to how to manage the trust from advice as to how to avoid liability. And in the context of asking — of a trustee's asking advice, the two are the same. Well, Your Honor, at some logical level, there is a link there that can never be severed. But I submit respectfully that the government, when it's getting advice about managing Indian trust funds, is not really focused on its liability. The government's liability, after all, is much more circumscribed than private fiduciaries in any number of ways. It is seeking legal advice about what is the proper way to invest. Can we do this? Can we pool funds? Can we do — you know, can we make a certain type of investment, or is it prohibited to us? And advice of that nature is advice to which the beneficiary is entitled. Private beneficiary — the beneficiaries of private trusts are entitled, and Indians, whose money is being managed because the government has taken on itself by statute and said, we are going to take control of your monies and we're going to manage them, have no lesser right to get access to this highly relevant information when they litigate for breach of trust. You make a distinction, I take it, between attorney-client privilege and work product. Initially, you were seeking both on the theory that the tribe is, in fact, the client. But apparently, you are not pressing that point anymore about work product. In fact, Your Honor, there is some case law that says that the fiduciary exception can be applied to work product. We did not press that point in the Court of Federal Claims. We — that we focused our request for documents on attorney-client, not on work product. So under your theory, if there is a claim of privilege on the government's behalf, presumably the district court would conduct an in-camera review to determine whether it was retrospective for liability or prospective for responsibility? Yes, Your Honor, which is exactly what happened here. The Court of Federal Claims reviewed all of the documents in camera and made a document by document determination, which is, of course, the standard approach when you are talking about attorney-client privilege. Did it do it on that basis? Did it do it on that basis, retrospective versus prospective? It didn't come up, Your Honor, because there weren't any retrospective ones. The — There were no prospective. Is that what you're saying? They are all prospective, Your Honor. They are all prospective. The — Well, they could be retrospective, too, right? I mean, the government exposes itself to liability, obviously, in these areas as well. That's the basis for your suit, right? Yes, Your Honor. The — I want to pick up, I believe it was on a comment that you made, Justice Sotomayor, when you said that under the government's theory there would be no need for Rule 501. And indeed, they say that it's not enough. 501 on its face says, apply common law principles. And the government's argument is, that's not enough unless there is some other statute that requires common law principles to be applied to us. Now, this is a neat trick. You just read 501 out of the rules of evidence when it comes to the government. Notwithstanding that 501 itself says it's to be used to determine privilege claims by the government, and that's reinforced in Federal Rule of Evidence 1101, which specifically says that the rules of evidence are to apply in the court of Federal claims. I suppose the government as a whole has an obligation to act in the best interest of the citizenry, right? Why doesn't the same theory apply to any citizen? Look, government, you're supposed to — you're acting in a fiduciary status with respect to me. You're supposed to be acting in my best interest. If you're getting advice from the, you know, Department of Justice about what to do, I'm entitled to get that. Your Honor, I think that that could pick up on the same distinction that the Court has already drawn in Mitchell I and Mitchell II between bare trust and a full-fledged trust. The government may have a general duty to act in the interest of all citizens. Indeed, I think we'd all agree with that. But that does not mean that the government is engaging in the conduct of a full-fledged trust with respect to citizens. It's not. Its relationship to citizens day in and day out is akin to, in fact, maybe even a level below, the bare trust relationship that was at issue in Mitchell I. So we're not proposing a sweeping new rule here. It's the government that's proposing to transform this Court's jurisprudence about Indians. Because the notion that the only enforceable obligations it has are those set forth in statute or regulation, were the Court to adopt that, it would be overruling its decision in White Mountain Apache. Are there any other areas in which the government's relationship to particular groups of citizens is that of fiduciary to beneficiary? Yes, Your Honor. What are some of those? Well, the principal one we could find, which is cited in our brief, is with respect to government retirees who make voluntary contributions to their fund. And the government's argument here could be applied to them. And your argument could be applied to them? Yes, Your Honor. And I'm happy for it to be. I believe it should be. So if I'm a government retiree, I have the ability to get the legal advice that whoever it is that runs that trust gets? Yes. I might add, Your Honor, fortunately it's not the Bureau of Indian Affairs that runs that. But does that happen a lot? I mean, I'm not — does that happen a lot? I mean, are there a lot of instances where the lawyers who work for all the retirement funds are huge? There must be cases coming up all the time. And all the advice of the lawyers is just available? No, Your Honor. No, frankly, it hasn't come up that much in terms of Federal retirees. There's the Kavanaugh v. Weinstein case that we cite in our brief, which is about the only published decision I've been able to find. The fact of the matter — I was being humorous a moment ago, but the fact of the matter is that the government retirement funds have been, it appears, run quite well. And there have been relatively few claims brought against them. There's a reason that there are a bunch of pending cases regarding Indian. Well, I know that. I'm just worried about the — the attorney-client privilege is somewhat sacred, and suddenly making everything available to the whole public has got me worried. And I looked at that Sears case. I didn't see anything there that eases my concern. And then you referred to a different case, the name of which I forgot, and I could not find it. That's the Julian case, Your Honor. Is that in the — I'm sorry, it's not cited in our brief. How am I going to find it? If I couldn't get how you spell it? No, I will. It's 486 U.S. 1, 1988, Your Honor. The — there is another inconsistency in the government's position here that I'd like to highlight for the Court, if I may. And that is this. The government relies on the common law in the first place to say it has a privilege. There's no statute that gives the government an attorney-client privilege. So it relies on common law saying we have an attorney-client privilege. Now, that's fine under Federal Rule 501, but the government says, well, it can rely on common law. PCORIA can't rely on that same common law to establish the limits on the privilege it's claiming. This Court described that sort of argument as heads I win, tails you lose. And so that it can't be right. And I submit that it can't be right here. The — Well, the government's been maintaining throughout that it wears two hats. On the one hand, it is a guardian or a trustee. And on the other hand, it is the sovereign. So it's the latter. The government's claim that it is the sovereign makes a difference. It's not a — I agree, Your Honor, that that's their claim. But the government hasn't shown how the fact that it is the sovereign, which we certainly concede, makes any meaningful difference for purposes of the issue presented  here. The cases it cites establish that the government, because it is sovereign, in some instances has broader authority than a private trustee would to help out the beneficiary. And I believe that that is the case. But it also has broader authority, and that's just their point, I take it, for many other areas. The sovereign can't easily divest itself of its responsibilities. A trustee can so conform and shape its business that it doesn't have conflicts. The government simply can't do that. Well, Your Honor, I agree. But the issue of conflicting, competing interests, first of all, it arises in the private trust context, and it arises frequently. Any time you've got a life beneficiary and a remainderman, you've got a potential conflict between the beneficiaries. And this issue of conflict has led to the development of the duty of impartiality for private trustees, and it's discussed at length in Section 79 of the Restatement. So the notion of competing interests is not unique to the government. The government may have some different competing interests than a private trustee might have. That's certainly conceivable. And if it does, the existence of a specific competing interest may affect whether the action that the government takes is or is not a breach of trust. But we're not talking here about competing interests. I mean, the example you give of the life beneficiary and the remainderman, those are interests of the beneficiaries that conflict. That's correct. We're talking here about an interest of the trustee that conflicts with what he is supposed to do with respect to the person who is the beneficiary of the trust. That's a totally different situation. Your Honor, I submit that it's not true. And ordinarily, if there is that kind of a conflict where the trustee has a personal conflict, he has to step down as trustee. You can't continue to be trustee when you — your own financial interests, for example, are against the financial interests of the beneficiary. Right? Well, Your Honor, you're positing that the trustee has a personal interest that's That's what the government asserts. I have other duties as government besides my duties to these Indians. And sometimes those duties conflict with my duties to the Indians. Those are competing responsibilities. I agree that the government may have that. And that may affect whether the decision that they ultimately make is or is not an appropriate decision. But it does not affect their duty to disclose, as a matter of evidence, the legal advice that they use to make that judgment. The beneficiary, when the beneficiary's money is at stake, is entitled to see what advice the government acted on in dealing with its money. Is this true regardless of the fact that the government may have a very powerful interest in seeking neutral, independent advice from an attorney, and that were you to prevail, that advice would become watered down? Yes, Your Honor. I don't, I submit that the ultimate balancing of interests here is the same as it is for a private fiduciary. There is no, the court, we urge the court to affirm that under Rule 501, Indian tribes are entitled to the same evidence as other trust beneficiaries about how their money was managed. That is our request of this Court. The trustee, I guess, is broadly conceived of as the government? Yes, Your Honor. Well, isn't the lawyer working for the trustee then a trustee, too, an employee of the trustee? I think that may, in a theoretical sense, be true, Your Honor. But practically speaking, there's a difference between the BIA officials who are acting as the trustee and the attorneys who are advising the trustee. Our claim is against the trustee. It's not against the attorneys. We are not seeking to impose any professional responsibilities on the government attorneys. Thank you, Mr. Gordon. Thank you. Mr. Shah, you have four minutes remaining. Your Honor, if I can just make three points on rebuttal. The first is with respect to Federal Rule of Evidence 501. The government is not implementing any trick here. This is not a heads-you-win, tails-you-lose type situation. Our argument is simple. We look to, we invoke a valid attorney-client privilege. The other side invokes a common law exception to that privilege. Our argument is not that no common law exception is applicable to the government. It's simply that the basis for this common law exception is not applicable. So the exception should not be applicable. It's a very straightforward argument. The second point I would like to make is in response to the contention that we have a full-fledged trust here as opposed to a bare trust in Mitchell. I'm not quite sure what a full-fledged trust means in the Indian trust context. Certainly, there are specific investment-related duties that the statute sets forth with respect to trust funds. But this Court has made clear in Mitchell and reiterated in the Navajo Nation decisions that it's not enough for the statute to simply set forth the statutory duties, but it must define, and this is the quote, define the contours of those duties. The statutes that issue section 161A, 162A do nothing of the sort. They don't even set out a general disclosure obligation, let alone the contours of any such disclosure obligation. But even if we were to disregard this Court's precedents in Mitchell and in Navajo Nation, and we were to resort to the common law to flesh out the nature of the responsibilities, again, there is nothing from the discrete investment obligations that are set forth in those statutes that would lead to a general disclosure obligation, let alone an intrusive obligation to disclose the government's attorney-client communications. And there's good reason to think that Congress did not imply such an obligation when it has set forth a fairly reticulated statutory and regulatory regime governing disclosures, and with respect to other statutes. For example, the 1982 Indian Claims Limitation Act specifically addressed privileged versus nonprivileged information. The last point I would make goes to the general duty to disclose whether that's contingent simply on payment, ownership, or other factors. While it may not be the case that the payment is the sole factor, it's certainly an important factor. And I think, as my friend responded in response to Justice Kennedy, if, in fact, the private trustee is paying for the legal advice on their own, that's going to be a significant consideration as to whether the beneficiary can get it. And as Justice Scalia pointed out, the lines are not always going to be clear between trust administration advice and liability advice. In fact, they're often going to run into one another. Beyond the payment, I think the even more important factor here is the ownership of the records. While payment is indicative of ownership, when we're talking about the government context, payment is not the only reason why we say that the government owns the records that result from legal advice or any other trust administration facet. That's set forth by statute and regulation, the Federal Records Act, and the Interior Department regulations that are set forth in the appendix of the brief. If I pay a lawyer to prepare a document for me, is that do I own that document or does the lawyer? I think as a general matter, one would think that the client would — it would belong to the client at least in the sense that the client would have full access to that document. And I think that's a fundamental distinction here, that we're not — because  disclosure of government documents, either specific disclosure obligations set forth by Congress, Interior Department regulation, or the more general freedom of information. But aren't you confusing, just following up on the Chief Justice's, ownership with access? FOIA itself doesn't make these records less — the government doesn't own them less merely because FOIA requires them to share it with other people. So the ownership interest is not the defining legal obligation. You're absolutely correct. The fact that they're accessible by FOIA does not — does not change the government's ownership of those records. But the fact that Congress is able to set forth a scheme like FOIA is turned on the fact that these are government records that are owned by the government. Because they're government records, it's Congress and it's the Interior Department that decides when to disclose them and under what circumstances to disclose them. The Tribes' rule here would eviscerate that very reticulated statutory and regulatory regime. Thank you, Mr. Shah. Mr. Gordon, the case is submitted.